UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-21042-CIV-KING

OSVALDO VISCOVICH,

    Plaintiff,

v.

SALMAN MAINTENANCE SERVICE, INC.,
A Florida corporation d/b/a SALMAN
LANDSCAPE SERVICES; ARBOR TECH
OF MIAMI, INC., a Florida corporation;
SALMAN LS, INC., a Florida corporation,
MARIO SALMAN, CHAD BETHEL,
EDWARD MESIS a/k/a "EDDIE MESIS",

    Defendants.
_____/

## ORDER DENYING PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon cross-motions for summary judgment filed on December 16, 2008, by Plaintiff Osvaldo Viscovich (D.E. #29) and Defendant Chad Bethel (D.E. #30).[1]

---

[1] On January 5, 2009, Defendants filed their Response to Plaintiff's Motion for Summary Judgment (D.E. #38). Plaintiff replied on January 15, 2009 (D.E. #43). As to Defendant Chad Bethel's Motion, Plaintiff responded on December 22, 2008 (D.E. #37). The Court has carefully reviewed all of the pleadings, along with the attached affidavits and depositions.

1

## I. BACKGROUND

On April 16, 2008, Osvaldo Viscovich ("Plaintiff") filed the above-styled action against corporate Defendants Salman Maintenance Services, Inc. ("Salman Maintenance"); Arbor Tech of Miami, Inc. ("Arbor Tech"); and Salman Landscaping Services, Inc. ("Salman LS") for overtime violations under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § *et seq* (D.E. #1).[2] Additionally, Plaintiff named Mario Salman, Chad Bethel and Edward Mesis as Defendants in their individual capacity.

According to Plaintiff, from April 21, 2005 to April 11, 2008 he worked for three companies, which were all owned by Defendant Mario Salman: 1) Salman Maintenance; 2) Salman LS; 3) Arbor Tech. Throughout the time he worked for Mario Salman's companies, he performed a number of different services including driving trucks, lawn maintenance, landscaping, and equipment maintenance. (Pl.'s Mot. Summ. J. 1). It is Plaintiff's position that Mario Salman's companies were essentially "a unified business unit" and that Plaintiff "was jointly employed by the Salman Companies, which were distinct in name only." (Pl.'s Mot. Summ. J. 1). As the primary basis for the above-styled action, Plaintiff alleges that "the corporate Defendants used the Salman Companies to avoid paying the Plaintiff overtime by simply issuing the Plaintiff two checks each week to make it appear that the Plaintiff did not exceed forty hours on any paycheck."

---

[2] Plaintiff's original Complaint was filed as a collective action. Plaintiff filed an Amended Complaint on August 29, 2009, which dropped the collective action and proceeded as an individual action. (D.E. 20).

(Pl.'s Mot. Summ. J. 1–2).

According to the Mario Salman, all three of his companies "have been separate and distinct corporations, operating independently from each other through different employees . . . performing and providing different services and products." (Salman Aff. ¶ 3). Defendant Salman Maintenance has always been a lawn maintenance company, "in the business of cutting grass and lawn maintenance for its customers." (Salman Aff. ¶ 4). Defendant Salman LS, which closed for business sometime in August 2008, (Salman Aff. ¶ 5), was a landscaping company primarily "in the business of installation of new plants, trees, shrubs . . . and installing irrigation equipment." (Salman Aff. ¶ 5). Defendant Arbor Tech was a tree-trimming company. (Salman Dep. 30).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once

the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that, to meet its burden, the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

In determining whether to grant summary judgment, the district court must remember that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party, *id.*; however, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

### III. ANALYSIS

Plaintiff's lawsuit relies on his allegations that Mario Salman's three companies—(1) Salman Maintenance; (2) Salman LS; and (3) Arbor Tech—operated as a single enterprise and jointly employed Plaintiff between April 21, 2005 to April 11, 2008.

A.  **Whether Salman Maintenance, Salman LS, and Arbor Tech Operated as a Single Enterprise for FLSA Coverage Purposes**

For an employer to be subject to FLSA, it must be covered under individual employee coverage or "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206 (2000). An employer is covered under FLSA as an enterprise if (1) the employer has two or more employees engaged in commerce or in the production of goods for commerce, or employees handling, settling, or otherwise working on goods or materials that have been moved in or produced for commerce by and person; and (2) the employer has a gross annual volume of sales made or business done of not less than $500,000. 29 U.S.C. § 203(r)(1), (s)(1) (2000).

Plaintiff alleges that the three corporate Defendants are covered by FLSA because they operate as an enterprise. Thus, all three corporate Defendants must meet the two prongs of enterprise coverage. Salman Maintenance, Salman LS, and Arbor Tech all stipulate to working on goods that been moved or produced for commerce (Corp. Defs' Stipulation, D.E. #31, Ex. 20). As to the volume-of-sales requirement, it is undisputed that Salman Maintenance and Salman LS's individual annual volume of sales is not less than $500,000. (D.E. #33, Ex. A); (D.E. #34, Ex. A–C). Defendant Arbor Tech, however, does not meet the annual sales requirement individually. (D.E. #31, Ex. 15). Plaintiff argues that Arbor Tech should be covered under FLSA because it is part of an enterprise, "whose gross annual dollar volume can be aggregated for the purpose of establishing enterprise coverage . . . ." (Pl.'s Mot. Summ J. 5).

The FLSA defines "enterprise" as:

> the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements . . . .

29 U.S.C. § 203(r)(1) (2000). To be deemed a "single enterprise" under FLSA, Salman Maintenance or Salman LS must share three factors with Arbor Tech: 1) related activities; 2) unified operation or common control; and 3) common business purpose. *See Donovan v. Easton Land*, 723 F.2d 1549, 1551 (11th Cir. 1984). All three elements must be satisfied for an "enterprise" to exist. *Id.* at 1551. In determining whether, based on the record, Arbor Tech can be found to be a single enterprise with Salman Maintenance or Salman LS as a matter of law, the Court finds that there are genuine issues of material fact as to whether the three corporate Defendants satisfy the necessary elements. Specifically, there are contradictory facts present in the record as to whether the three companies engaged in shared unified operation and a common business purpose.

Plaintiff contends that all three companies shared a common business purpose, however, the record is inconsistent as to what services each of the three corporate Defendants provided. For example, Plaintiff points out that, "to the extent Arbor Tech performs tree trimming and planting services, such activities are related to the Salman Companies' 'green' work of beautifying landscapes. Moreover, Salman Maintenance also performed tree trimming and small limb removal services." (Pl.'s Mot. Summ. J. 6).

The affidavits of Defendants Mario Salman and Edward Mesis show that Salman Maintenance "has been in the business of cutting grass and lawn maintenance . . . ." (Mesis Aff. ¶ 4); (Salman Aff. ¶ 4). Further, Defendants contend that "Salman LS was in the business of installation of new plants, trees, shrubs, and related materials, watering and maintaining such new arbor material installed by it, and installing irrigation equipment" (Mesis Aff. ¶ 5); (Salman Aff. ¶ 5). According to Defendants, Arbor Tech has always been a tree trimming company. (Salman Dep. 30).

The Court also cannot find, based on the record, that the companies shared unified operation and common control. While it appears to be Defendants' position that all three corporate Defendants are unique companies, Mario Salman admits in his deposition that "[Arbor Tech]'s just the same as [Salman] LS . . . It's just filed with the State. It doesn't do anything. It just has its corporate documents, that's it." (Salman Dep. 28). Additionally, there are factual issues in the record as to whether the three corporate Defendants shared management level employees. Defendants dispute Plaintiff's allegations that Edward Mesis "supervised" Plaintiff while he provided services for Arbor Tech (Defs' Resp. Pl.'s Mot. Summ. J. 6); (Mesis Aff. ¶ 19). But, Mario Salman expressly states in his deposition that "Eddie supervised Plaintiff's work at Arbor Tech" (Salman Dep. 59). Defendants argue that Edward Mesis would occasionally speak on behalf of Salman Maintenance to advise Arbor Tech's independent contractors what services needed to be performed on Salman Maintenance equipment. (Mesis Aff. ¶ 19).

7

This, however, indicates that a Salman Maintenance supervisor—Edward Mesis—was indeed working directly to oversee Plaintiff's work for Arbor Tech. Finally, Defendants contend that Edward Mesis, the acting supervisor for Salman Maintenance did not set pay rates for the other corporate Defendants and that Mesis "was not the one who decided to use Arbor Tech to pay the Plaintiff for work her performed maintaining Salman Maintenance's equipment." (Salman Aff. ¶¶ 20–21). Edward Mesis contradicts this by admitting to making a decision to pay Plaintiff for maintenance of Salman Maintenance equipment from Arbor Tech accounts (Mesis Dep. 50).

### B. Whether Salman Maintenance, Salman LS, and Arbor Tech are Liable as Joint Employers under FLSA

Even if the Court were to find that Salman Maintenance, Salman LS, and Arbor Tech all constitute a single enterprise for purposes of FLSA coverage, there are still genuine issues of material fact present as to whether the three corporate Defendants can be classified as Plaintiff's joint employers. Defendants concede that, at various times throughout Plaintiff's employment with the companies, Salman Maintenance and Salman LS were Plaintiff's employers, (Salman Dep. 53); however, the Parties disagree as to whether Plaintiff was an "employee" of Arbor Tech. Defendants instead maintain that, when working for Arbor Tech, the Plaintiff was an independent contractor.

Under FLSA, a joint employment relationship exists "where a single individual stands in the relation of an employee to two or more persons at the same time." *Jimenez v. S. Parking, Inc.*, No. 07-23156-CIV, 2008 WL 4279618, at *12 (S.D. Fla. Sept. 16, 2008)

8

(*quoting Gonzalez-Sanchez v. Int'l Paper Co.*, 346 F.3d 1017, 1020 (11th Cir. 2003); *see also* 29 C.F.R. § 791.2 (2008). When making a determination of whether joint employment exists under FLSA, a court must look at the "economic realities" of the particular case. *See Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); *Antenor v. D&S Farms*, 88 F.3d 925, 929–30 (11th Cir. 1996). The following factors should be considered under a proper joint-employment relationship analysis: (1) the nature and degree of the putative employer's control over the workers; (2) the degree of supervision, direct or indirect of the work; (3) the right, directly or indirectly, to hire, fire, or modify the worker's employment conditions; (4) the power to determine the worker's pay rates or methods of payment; (5) the preparation of payroll and payment of worker's wages; (6) ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; (8) the relative investment in equipment and facilities. *See Antenor*, 88 F.3d at 930 n.6 (*citing* 29 U.S.C. § 500.20(h)(4)(I) (2000)).

In addition to looking to the eight factors, when there is a question of whether a worker is an independent contractor, the court should analyze the workers' opportunity for profit and loss, the permanency and exclusivity of the employment, and the degree of skill required to perform the workers' job. *See Antenor*, 88 F.3d at 932 n.9 (*citing Aimable v. Long & Scott Farms*, 20 F.3d 443–45 (11th Cir. 1994)). Defendants contend that Plaintiff's position as an independent contractor is evidenced by an agreement signed

by the Plaintiff, entitled "Independent Contractor Agreement." (D.E. #6, Salman Answer, Ex. 1). The Agreement states that "[u]nder this agreement, it is understood that each independent contractor is totally independent from Arbor Tech of Miami, Inc. . . ." (D.E. #6, Salman Answer, Ex. 1). The Agreement between Plaintiff and Defendant, however, is irrelevant to a determination of whether Plaintiff was indeed an independent contractor. *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 470–71 (11th Cir. 1982) ("That the appellants may not have had the intention to create an employment relationship is irrelevant; it is sufficient that one person 'suffer or permit (another) to work.") (internal citations and quotation marks omitted). The Court is instead required to analyze the relationship between the Plaintiff and Arbor Tech to make such a determination.

In addressing the relationship between Plaintiff and Arbor Tech, the Court finds that the record contains genuine issues of material fact as to what type of work Plaintiff performed for Arbor Tech. Plaintiff contends that the work he did for Arbor Tech did not require any specialized skill. In addition, Defendant Mario Salman, in his deposition, says that the work that Plaintiff did for the three corporate defendants did not require any type of specialized skill, and in fact, "[t]he guy at Home Depot could have done it." (Salman Dep. 63). Later, however, Mario Salman states in his affidavit that "Plaintiff Osvaldo Viscovich requested and agreed to perform specific highly skilled and specialized tasks for Defendant Arbor Tech, which included maintaining and repair of specialized equipment." (Salman Aff. ¶ 13). Additionally, Defendant Edward Mesis

10

contends that Plaintiff maintained specialized equipment, (Mesis Aff. ¶ 12), and that Mesis "taught [Plaintiff] how to do the maintenance on the equipment." (Mesis Dep. 25). In his deposition Mesis testified that Plaintiff performed such tasks as "cleaning air filters, greasing grease fittings, air pressure on the tires is correct, changing blades on the tractors" (Mesis Dep. 19). In the opinion of this Court, there are issues of fact as to whether such tasks are considered specialized.

C.    **Whether Chad Bethel can be Held Individually Liable Under FLSA**

Plaintiff sues Defendant Chad Bethel as an individual employer under FLSA. Bethel was the General Manager of Salman Maintenance and Salman LS. Plaintiff alleges that "Bethel ran the day-to-day operations" of these companies, and thus, is liable under FLSA. Bethel argues, in his motion for summary judgment, that as a matter of law he cannot be found to be an employer, solely based upon his position with Salman Maintenance and Salman LS (Def. Bethel Mot. for Summ. J. 2).

A corporate officer cannot be held individually liable for violating FLSA unless he is an "employer" within the meaning of the Act. *See Alavarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008). Under FLSA, an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (2000). For a corporate officer to be held individually liable as an employer, he or she "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel v.*

11

*Wargo*, 803 F.2d 632, 638 (11th Cir. 1986).

  The Court finds that the record creates issues of material fact as to Chad Bethel's role as general manager. Bethel contends that his job for Defendants Salman Maintenance and Salman LS was limited to "estimating landscaping and lawn maintenance jobs, communicating with customers and prospective customers, coordinating performance of jobs with supervisors, and general office administration." (Bethel Aff. ¶ 4). Further, Bethel contends that he "has never been responsible for the day-to-day operation[s] . . . establishing payroll or actually making payment of any payroll . . . [nor] been the direct or indirect supervisor of Plaintiff . . . ." (Bethel Aff. ¶¶ 4–6).

  Plaintiff argues that Bethel was involved in the day-to-day operations, relying heavily on Bethel's deposition testimony that he fired a laborer whom the field supervisor stated had to go. (Bethel Dep. 48–49). In addition, the record is unclear as to the level of Bethel's responsibility derived from his position running the companies' operations in the office. Bethel admits to being "involved in a lot of the paperwork aspects of the company" and doing "the behind-the-scenes job for the supervisor." (Bethel Dep. 15, 17). Furthermore, a reasonable fact-finder could deduce from the record that Bethel plays a significant role in addressing company efficiency and its effect on company hiring and firing. (Bethel Dep. 48–49). Thus, the undersigned concludes that there are genuine issues of material fact that need to be resolved as to Defendant Chad Bethel's status as an

individual employer under FLSA.

## IV. CONCLUSION

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Summary Judgment **(D.E. #29)** be, and the same is hereby, **DENIED**. It is further **ORDERED, ADJUDGED, AND DECREED** that Defendant Chad Bethel's Motion for Summary Judgment **(D.E. #30)** be, and the same is hereby, **DENIED**. The above-styled matter **SHALL PROCEED** by Plaintiff Osvaldo Viscovich against Defendants Salman Maintenance Services, Inc.; Arbor Tech of Miami, Inc.; Salman LS, Inc.; Mario Salman; Chad Bethel; and Edward Mesis in accordance with the Court's May 12, 2008 Scheduling Order (D.E. #10) setting final pretrial conference on February 13, 2009 and trial to commence on the Court's trial calendar of March 30, 2009.

**DONE AND ORDERED** in the Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 12th day of February, 2009.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: **_Counsel for Plaintiff_**
**Peter J. Bober**
**Samara Robbins Bober**
Bober & Bober
1930 Tyler Street
Hollywood, FL 33020


**_Counsel for Defendants_**
**William M. Tuttle, II**
169 E. Flagler Street
Suite 1620
Miami, FL 33131